[Cite as *State v. Turner*, **2018-Ohio-3898.**]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 28775 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| TRENT D. TURNER | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR-2015-11-3653-C |

DECISION AND JOURNAL ENTRY

Dated: September 26, 2018

SCHAFER, Presiding Judge.

{¶1} Defendant-Appellant, Trent D. Turner, appeals from his convictions in the Summit County Court of Common Pleas. For the reasons that follow, we affirm.

I.

{¶2} In September of 2016, the Summit County Grand Jury indicted Turner[1] for the following offenses: Count 7 - aggravated murder in violation of R.C. 2903.01(B), a special felony; Count 8 - murder in violation of R.C. 2903.02(A), a special felony; Count 9 - murder in violation of R.C. 2903.02(B), a special felony; Count 10 - aggravated robbery in violation of R.C. 2911.01(A)(3), a first-degree felony; Count 11 - aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony; Count 12 - aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony; Count 13 - aggravated burglary in violation of R.C.

---

[1] Counts 1-4 and 5-6 of the indictment charged two co-defendants not relevant to this appeal.

2911.11(A)(1), a first-degree felony; Count 14 - aggravated burglary in violation of R.C. 2911.01(A)(2), a first-degree felony; Count 15 - trespass in a habitation in violation of R.C. 2911.12(B), a fourth-degree felony; Count 16 - felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony; Count 17 - felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony; Count 18 - grand theft in violation of R.C. 2913.02(A)(1), a third-degree felony; Count 19 - having weapons while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony; and Count 20 - carrying concealed weapons in violation of R.C. 2923.12(A)(2), a fourth-degree felony. Counts 7-18 each included a firearm specification pursuant to R.C. 2941.145. Counts 7-17 each included a repeat offender specification pursuant to R.C. 2941.149.

{¶3} The indictment arose from a shooting that occurred during a drug transaction, resulting in the death of C.S. on or about the night of November 8, 2015. Turner entered a plea of not guilty to all charges. The trial court held a hearing on Turner's motion to suppress, and overruled the motion prior to trial.

{¶4} The matter proceeded to a jury trial. At trial, 12 witnesses testified on behalf of the State. At the close of the State's case-in-chief, Turner made a Crim.R. 29 motion for judgment of acquittal, renewed all prior motions, and, after resting without calling witnesses, renewed all motions again prior to closing arguments. The trial court summarily denied these motions.

{¶5} After deliberations, the jury returned its verdicts finding Turner not guilty of the offenses of aggravated murder in Count 7 and murder in Count 8. The jury found Turner guilty of the offenses in all twelve of the remaining counts and all firearm specifications attached thereto. The trial court accepted the jury's verdicts and entered judgment accordingly. Based on

the finding that Turner was not guilty on Counts 7 and 8, the trial court dismissed the attached repeat violent offender specifications. The trial court considered the repeat violent offender specifications attached to Counts 9, 10, 11, 12, 13, 14, 16, and 17, and made the finding that Turner is a repeat violent offender with respect to each of those specifications. The trial court then sentenced Turner according to law.

{¶6} Turner timely appealed his conviction, presenting three assignments of error for our review.

II.

**Assignment of Error I**

**The trial court erred when it failed to suppress all evidence and statements obtained in violation of [Turner]'s Fourth, Fifth and Sixth Amendment rights under the United States Constitution and Article I, Sections Ten and Fourteen of the Ohio Constitution.**

{¶7} In his first assignment of error, Turner contends the trial court erred when it denied his motion to suppress all out-of-court and in-court identification by State's witness, Andrew Scovern, an eye-witness to the shooting. Turner argues that, during the investigations, Mr. Scovern was exposed to an impermissibly suggestive and tainted photo array. Turner further argues that this Court should reverse the trial court's denial of the motion to suppress and order the charges against him to be dismissed. We disagree.

{¶8} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When the trial court considers a motion to suppress, it assumes the role of trier of fact and, therefore, it is in the "best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id*. This Court must "then independently

determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*.

{¶9} The trial court held a hearing on Turner's motion to suppress eyewitness identification. At the hearing, the court heard testimony from two detectives of the Summit County Sheriff's Office investigating the shooting death of C.S.—Detective Jeff Franklin and Detective Jason Kline—and admitted State's Exhibits A and B. After the conclusion of the hearing, the trial court issued a decision denying the motion to suppress, and finding that the photo array presented to Mr. Scovern was not unnecessarily suggestive, nor was Mr. Scovern's identification of Turner as the shooter unreliable.

{¶10} This Court engages in a two-part analysis to determine whether photo array procedures were unnecessarily suggestive, such that due process requires suppression of the identification. *State v. Johnson*, 9th Dist. Summit No. 22688, 2006-Ohio-1313, ¶ 8, citing *State v. Waddy*, 63 Ohio St.3d 424, 438 (1992). First, the court must determine whether the identification procedure was unnecessarily suggestive. *Waddy* at 438, citing *Neil v. Biggers*, 409 U.S. 188, 196-198 (1972); *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977). If the procedure was unnecessarily suggestive, the court must then determine whether the identification was ultimately unreliable under the all of the circumstances. *Waddy* at 439. The court must consider the relevant factors to assess reliability and determine whether the circumstances of the identification created """a very substantial likelihood of irreparable misidentification."" *Waddy* at 439, quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968), quoting *Neil* at 198. Those factors include:

> (1) the witness's opportunity to view the defendant at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of

the confrontation, and (5) the length of time elapsed between the crime and the identification.

*Johnson*, 2006-Ohio-1313 at ¶ 9, quoting *State v. Davis*, 76 Ohio St.3d 107, 113 (1996).

{¶11} In his merit brief, Turner reiterates the arguments made in the motion to the trial court in addition to raising new arguments based on testimony at trial. However, Turner has not directly challenged any of the trial court's findings of fact or conclusions of law in the journal entry denying the suppression motion. Turner argues that Mr. Scovern gave "vague, inconsistent and grossly racist descriptions of the shooters" and claims that it is, therefore, "impossible that Mr. Scovern identified [Turner] based only on his memory of the events of November 8, 2015." Turner also argues that "Mr. Scovern had conducted an independent 'Facebook research' to identify [Turner] after learning that he was a possible suspect." These new arguments were not raised before the trial court and are not based on evidence or testimony from the suppression hearing; rather they are based entirely on trial testimony. However, trial testimony has no bearing upon the trial court's ruling on a pretrial suppression motion. *State v. Jackson*, 9th Dist. Summit No. 26234, 2012-Ohio-3785, ¶ 14. When reviewing the trial court's decision to deny a motion to suppress, this Court must confine our review to the evidence presented during the pretrial suppression hearing, "because such evidence was the only evidence before the trial court when it ruled on the motion." *State v. Weese*, 9th Dist. Summit No. 20769, 2002-Ohio-3750, fn. 2. Accordingly, we decline to address those arguments as they are not within the scope of this Court's review.

{¶12} Turner also argues that the photo array was "'so impermissibly suggestive' that it gave rise to a very substantial likelihood of irreparable misidentification." Turner contends that officers used "several biasing techniques" to pick Turner as the perpetrator. Turner does not specify the nature of these alleged biasing techniques or indicate any other procedural

deficiencies, aside from asserting that Mr. Scovern "had seen the surveillance video multiple times prior to attempting his identification" and that detectives replayed "the surveillance video to improperly steer [Mr. Scovern] to select [Turner]" in the photo array.

{¶13} In its ruling on the motion to suppress, the trial court acknowledged that Mr. Scovern viewed surveillance footage firsthand, viewing it live on a screen in the room just prior to, and just after, the shooting occurred. A monitor, located in the same room where Mr. Scovern was confronted face to face with the shooter, displayed a multi-view live feed of the exterior of the victim's residence. Mr. Scovern later reviewed the recorded surveillance video and still images taken from the footage on the phone of the victim's brother prior to his initial interview with the detectives. "The rationale for excluding a tainted pretrial identification[,]" however, "is to protect the defendant from misconduct by the *state*." (Emphasis added.) *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, ¶ 19, quoting *State v. Brown*, 38 Ohio St.3d 305, 310 (1988). The facts regarding Mr. Scovern's observations of surveillance video and images with C.S.'s brother prior to his initial interview with detectives do not implicate state action and, therefore, are not relevant to the procedure detectives used in the confrontation. *See Brown* at 310-311.

{¶14} Turner also maintains his contention that the detectives' review of the surveillance video with Mr. Scovern was impermissibly suggestive. In its decision, the trial court recognized that detectives reviewed the surveillance video with Mr. Scovern during his initial interview on November 9, 2015. In addition to finding that Mr. Scovern had already viewed the surveillance video on the live-feed and on the phone of C.S.'s brother, the trial court also correctly noted that Turner was present, in a room with good lighting, and face-to-face with the shooter from a distance of approximately four feet.

{¶15} Furthermore, the trial court observed that Turner had not yet been identified as a suspect when Mr. Scovern reviewed the surveillance video with detectives. At a later interview on November 13, 2015, after Turner was named as a suspect, police presented Mr. Scovern with another photo array. Mr. Scovern identified Turner as the shooter based on this photo array, twice selecting Turner's photo and indicating a high degree of certainty with his selection. We conclude that the trial court determined, based on competent and credible evidence in the record, that detectives had followed standard procedures in the assembly and presentation of that photo array to Mr. Scovern.

{¶16} Although the trial court was not required to continue in its analysis, the court went on to find in the alternative that "even if it could be said that the photo array was in some way unduly suggestive, it was still appropriate." The trial court based this determination on findings relevant to the five factors used to assess reliability of a suggestive identification. *See Johnson*, 2006-Ohio-1313 at ¶ 9. The trial court found that Mr. Scovern had ample opportunity to observe the shooter during the incident, and that he witnessed from a close proximity when the shooter pulled out a gun, shot C.S., and then instructed Mr. Scovern himself to turn and face the wall. Although Mr. Scovern's initial description of the shooter was somewhat vague, the trial court found that Mr. Scovern indicated certainty in his identification of Turner in the photo array and, moreover, Mr. Scovern made his identification a mere four days after the incident.

{¶17} Upon review, this Court agrees with the trial court's conclusion that there was no evidentiary support in the record to suggest that the eyewitness identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification[,]" and that, based on the totality of the circumstances, the identification was

reliable. Therefore, we conclude that the trial court did not err in denying the motion to suppress. Turner's first assignment of error is overruled.

## Assignment of Error II

**The evidence in this case was insufficient as a matter of law to support the convictions and, as a result, [Turner]'s rights as protected by Article I, Section 16 of the Ohio Constitution and Fifth Amendment of the United States Constitution were violated.**

{¶18} In his second assignment of error, Turner contends his convictions are not supported by sufficient evidence and argues that his convictions were based on "defective eyewitness testimony." Turner claims that, "[w]ithout forensic evidence to connect him to the scene of the shooting and with no reliable eyewitness identification, there was simply no evidence to convict [him] of the alleged crimes." We disagree.

{¶19} A challenge to the sufficiency of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. Although we conduct a de novo review when considering a sufficiency of the evidence challenge, the appellate court does not resolve evidentiary conflicts or assess the credibility of witnesses as those functions belong to the trier of fact. *State v. Tucker*, 9th Dist. Medina No. 14CA0047-M, 2015-Ohio-3810, ¶ 7.

{¶20} This matter involves Turner's convictions for murder, aggravated robbery, aggravated burglary, trespass in a habitation, felonious assault, grand theft, having weapons

while under disability, and carrying concealed weapons, along with the related firearm and repeat offender specifications. Turner does not challenge the sufficiency of the evidence with respect to any particular offense or offenses for which he was convicted. Instead, Turner focuses on the issue of identification, arguing that the "State's entire case against [him] hinged on eyewitness identifications[,] each of which was defective and unreliable" and challenging that there was "absolutely no forensic evidence" connecting him to the scene of the shooting.

{¶21} "[I]dentity of the perpetrator is an essential element that must be proved beyond a reasonable doubt." *State v. Johnson*, 9th Dist. Lorain No. 13CA010496, 2015-Ohio-1689, ¶ 13. "As with any other element, * * * identity may be proved by direct or circumstantial evidence, which do not differ with respect to probative value." *State v. Taylor*, 9th Dist. Summit No. 27273, 2015-Ohio-403, ¶ 9. Turner has limited his sufficiency challenge to the issue of identification; accordingly, we limit our review to that issue. Because it is unclear from his merit brief the scope of Turner's argument (i.e. whether he means to challenge the sufficiency of the evidence specifically implicating Turner as the shooter, or more broadly as it relates to all of his convictions), we confine our analysis to the specific issues Turner has raised in his brief.

{¶22} Turner argues that the testimony of State's witnesses, Mr. Sims and Ty'Shawn Henderson, is unreliable because each received favorable treatment from the State in exchange for their testimony. During trial, both Mr. Sims and Mr. Henderson testified before the jury regarding their respective agreements with the State and were cross-examined on this issue. Thus, the jury had the opportunity to consider these issues as they relate to credibility of the witnesses' testimony implicating or identifying Turner. However, "an evaluation of witnesses' credibility * * * is not proper on review for evidentiary sufficiency" and such challenges are not

relevant to Turner's sufficiency of the evidence claim. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79.

{¶23} Additionally, Turner asserts that State's witness, Alex Eggleston, did not identify Turner as the shooter because he did not witness the shooting. Turner also notes that State's witness, Zachary Apenzeller, was either unable to identify Turner from a photo array or, as the State suggested, refused to do so out of fear for retaliation. Turner fails to demonstrate the relevance of Mr. Eggleston's testimony, or Mr. Apenzeller's inability or unwillingness to identify Turner, to his claim of insufficient evidence and has not articulated a sufficiency argument on this point.

{¶24} Finally, we address Turner's assertion that the State did not present any "forensic evidence" connecting Turner to the shooting. This Court's "function when reviewing the sufficiency of the evidence to support a criminal conviction is to *examine the evidence admitted at trial* to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." (Emphasis sic.) *State v. Wilks*, __Ohio St.3d__, 2018-Ohio-1562, ¶ 167, quoting *Jenks* at paragraph two of the syllabus. We again note that the State can establish identity through direct or circumstantial evidence. *Taylor*, 2015-Ohio-403 at ¶ 9. The fact that the State did not present a particular type of evidence does not negate the sufficiency of the identification evidence that the State did present. *See Wilks* at ¶ 166, citing *State v. Dye*, 9th Dist. Summit No. 17763, 1997 Ohio App. LEXIS 873, 23 (Mar. 12, 1997) (the "State need only have had sufficient evidence, not the best possible evidence, to survive a challenge on insufficient evidence grounds.") We conclude that Turner's argument regarding the absence of forensic evidence fails to present a challenge to the sufficiency of the evidence.

{¶26} Turner has made "cursory reference to * * * purported deficiencies in the trial court record, but fails to explain how any of the issues he attempts to raise establish that the evidence at trial was insufficient to sustain his conviction." *State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 28. We conclude that Turner has not demonstrated that the State failed to present sufficient evidence to prove identity. Turner's second assignment of error is overruled.

**Assignment of Error III**

**The verdicts in this case were against the manifest weight [of the] evidence and, as a result, [Turner]'s rights as protected by Article I, Section 16 of the Ohio Constitution and Fifth Amendment of the United States Constitution were violated.**

{¶25} In his third assignment of error, Turner contends that the verdicts in this case were against the manifest weight of the evidence.

{¶26} A sufficiency challenge is legally distinct from a manifest weight challenge. *Thompkins* at 387. Accordingly, when applying the manifest weight standard, we are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

{¶27} Turner argues that "[i]n this case, the manifest weight of the evidence balances in favor of [Turner]." In his brief, Turner contends that, even though his motion to suppress was

not granted, "all of the identification testimony presented at trial was wholly without credibility." Without pointing to any particular evidence in the record, Turner very briefly reiterates his argument from the first two assignments of error. Turner references Mr. Scovern's review of the surveillance video and alludes to a plea deal between Mr. Scovern and the State in claiming that Mr. Scovern's identification of Turner was "suspect" and "unreliable." Turner then summarily concludes that, with the lack of forensic evidence and the "tainted or unreliable eyewitness identification, there was not sufficient evidence to convict [Turner] and his conviction was against the manifest weight of the evidence."

{¶28} The Ohio Supreme Court has identified eight factors that may be considered when deciding whether a conviction is against the weight of the evidence:

> These include whether the evidence was uncontradicted, whether a witness was impeached, what was *not* proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary.

(Emphasis sic.) *State v. Apanovitch*, 33 Ohio St.3d 19, 23-24 (1987). It is not enough to simply mention one of these factors, however, as Turner has done. Turner carried the burden to present an argument, with citations to the record, to support the conclusion that the conviction is against the weight of the evidence. He failed to take that step.

{¶29} In this third assignment of error, Turner improperly relies on his arguments in his first two assignments of error without making any attempt to demonstrate how his contentions relate to the weight of the evidence with respect to any element of the twelve charges for which he was convicted. *See State v. Feliciano*, 9th Dist. Lorain No. 09CA009595, 2010-Ohio-2809, ¶ 33. In doing so, he fails to articulate a separate manifest weight argument. Mr. Turner did not cite to a single page in the seven volumes of the trial testimony to support his conclusion that the

evidence weighs against any of his convictions. A conclusory statement that witnesses are unreliable does not meet the appellant's burden to show that a conviction is against the weight of the evidence. This Court relies on the appellant to create an argument based on the law and the facts. *See Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."). Aside from setting forth the standard of review for a manifest weight challenge, Turner has not cited to authorities, statutes, or parts of the record. Turner has not presented an argument supporting his contentions with respect to this assignment of error as required by App.R. 16(A)(7). This court will not create or develop an argument on Turner's behalf. *State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 47, citing *Sadeghi*, 2016-Ohio-744 at ¶ 32. Furthermore, this Court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2); *accord* Loc. App. R. 7(F).

{¶30} We conclude that Turner has failed to articulate an argument to support his contention that any of his convictions was against the manifest weight of the evidence. Turner's third assignment of error is overruled.

III.

{¶31} All three of Turner's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

14

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

DONALD R. HICKS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.