[Cite as *State v. Thompson*, 2025-Ohio-3262.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 31237 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ALLEN THOMPSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2022-11-3932 |

DECISION AND JOURNAL ENTRY

Dated: September 10, 2025

STEVENSON, Presiding Judge.

{¶1} Defendant-Appellant, Allen Thompson, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Two warrants issued for Mr. Thompson's arrest while he was on post-release control. Members of the U.S. Marshal's Northern Ohio Violent Fugitive Task Force ("Task Force") tracked him to a house in Akron. When Task Force members knocked on the door, a female answered. She admitted that Mr. Thompson was living there. She also admitted that he was hiding under a bed in the southwest bedroom. Task Force members issued verbal commands to Mr. Thompson, and he surrendered. Following his arrest, Task Force members searched the house pursuant to a consent-to-search provision Mr. Thompson signed as a condition of his post-release control and consent they received from the female who answered the door. Inside the

southwest bedroom, Task Force members found a large quantity of cash and a black bookbag. The bookbag contained over 730 grams of methamphetamine.

{¶3} Mr. Thompson was charged with aggravated trafficking in methamphetamine and aggravated possession of methamphetamine. Both counts carried a major drug offender specification. Additionally, the aggravated trafficking count included forfeiture specifications for the money the police found in the southwest bedroom and a firearm. The police found the firearm during a second search they conducted at the same residence on a later date.

{¶4} Mr. Thompson moved to suppress with the assistance of counsel. He challenged the initial search the Task Force members conducted, arguing that it violated his constitutional rights. The State filed a brief in opposition, and the trial court held a hearing. Following the hearing, the court took the matter under advisement and accepted post-hearing briefs from both parties. It later denied the motion to suppress.

{¶5} After the trial court denied his motion, Mr. Thompson requested new counsel and moved for leave to file a supplemental motion to suppress. The court granted his motions and appointed him a new attorney. Mr. Thompson later decided to represent himself, and the court ordered his newly appointed attorney to act as standby counsel. Mr. Thompson then moved pro se to reopen and reconsider his motion to suppress. Upon review, the court denied his motion. It also denied a second motion Mr. Thompson filed to reopen and reconsider his motion to suppress.

{¶6} A jury found Mr. Thompson guilty of aggravated trafficking, aggravated possession, and the firearm specification linked to his aggravated trafficking count. The court then found him guilty of his remaining specifications. The court sentenced him to an indefinite prison term of 11 to 16.5 years in prison and a $10,000 fine.

{¶7}    Mr. Thompson now appeals from the trial court's judgment.    He raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING THOMPSON'S MOTION TO SUPPRESS THE WARRANTLESS SEARCH AND THEREBY VIOLATING THOMPSON'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION AGAINST UNREASONABLE SEARCHES AND SEIZURES . . . .**

{¶8}    In his sole assignment of error, Mr. Thompson argues the trial court erred when it denied his motion to suppress.  He claims his constitutional rights were violated when officers conducted a warrantless search of the house where he was found and the bookbag found in the southeast bedroom.  We disagree.

{¶9}    The Ohio Supreme Court has stated:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.)  *State v. Burnside*, 2003-Ohio-5372, ¶ 8.  "Once this Court has determined that the trial court's factual findings are supported by the evidence, we consider the trial court's legal conclusions de novo."  *State v. Iloba*, 2021-Ohio-3700, ¶ 7 (9th Dist.).  *Accord State v. Diaw*, 2025-Ohio-2323, ¶ 8.

{¶10}    "Subject to specific exceptions, which the State has the burden of establishing, warrantless searches are unreasonable per se under the Fourth Amendment."  *State v. Atkinson*,

2020-Ohio-3522, ¶ 13 (9th Dist.). An exception to the general prohibition on warrantless searches exists when a parolee or probationer executes a consent-to-search provision as a condition of his release. *State v. Campbell*, 2022-Ohio-3626, ¶ 12. "[A] warrantless search performed pursuant to a condition of parole requiring a parolee to submit to random searches of his or her person, motor vehicle, or place of residence by a parole officer at any time is constitutional." *State v. Benton*, 82 Ohio St.3d 316, 322 (1998).

{¶11} The trial court found that Mr. Thompson was placed on post-release control in March 2021. The court found that, as a condition of his release, he initialed and signed a document titled "Conditions of Supervision". The court found that Mr. Thompson agreed to allow authorized personnel from the Ohio Department of Rehabilitation and Corrections to conduct warrantless searches of his person, car, place of residence, personal property, or property at any time.

{¶12} The trial court found that members of the Task Force began looking for Mr. Thompson after two warrants were issued for his arrest. The first warrant was a federal warrant for felony possession of a firearm. The second warrant was issued by the Ohio Adult Parole Authority for violating parole. The trial court found that Task Force members received information that Mr. Thompson was living at an Akron residence with a possible girlfriend. Based on that information, they went to the residence to conduct surveillance. The trial court found that one Task Force member was Officer Todd Liggett, who worked as a parole officer with the Ohio Adult Parole Authority under the Ohio Department of Rehabilitations and Corrections.

{¶13} The trial court found that Task Force members saw movement in a bedroom window and spotted an individual resembling Mr. Thompson. They then knocked on the door, and a female answered. The court found that the female admitted Mr. Thompson was living at the residence and was hiding under a bed in the southwest bedroom. Mr. Thompson complied with

verbal orders the officers issued and exited the residence. After he was arrested, the female gave Task Force members consent to conduct a security sweep of the residence and consent to search for contraband and weapons. The court found that Detective Ryan Connell searched the southwest bedroom where Mr. Thompson had been hiding. He found a black bookbag near the foot of the bed in that room. The bookbag contained over 730 grams of methamphetamine.

{¶14} The trial court found that the warrantless search the Task Force conducted was constitutional. It based its decision on the consent-to-search provision Mr. Thompson signed as a condition of his post-release control and the consent to search that Task Force members received from the female at the residence. Because the court deemed the warrantless search constitutional, it denied Mr. Thompson's motion to suppress.

{¶15} Mr. Thompson argues that the trial court erred when it denied his motion to suppress because the warrantless search the police conducted violated his constitutional rights. While he has not directly challenged any of the trial court's factual findings, he offers numerous examples of how testimony Officer Liggett and Detective Connell gave at the suppression hearing was incorrect. In support of those assertions, he repeatedly cites testimony elicited at his trial. Mr. Thompson argues that testimony shows he did not live at the house where officers arrested him. According to Mr. Thompson, if a parolee does not live at a residence, R.C. 2967.131(C) requires parole officers to have reasonable suspicion that the parolee is not complying with the terms of his parole before they can conduct a warrantless search. He argues that Task Force members had no reason to believe there was contraband in the house where he was arrested or the bookbag in the southwest bedroom. According to Mr. Thompson, the female who lived at the residence could not give Task Force members consent to search closed containers that did not belong to her (i.e., the bookbag). Moreover, he argues that the evidence showed Task Force members searched the

bookbag before the female even agreed they could search the residence for contraband. Mr. Thompson argues that Task Force members exceeded the scope of any consent the female gave to search the residence and never established who was the owner of the bookbag before opening it. Because Task Force members lacked consent to open the bookbag and did not meet the conditions of R.C. 2967.131, Mr. Thompson argues that their search violated his constitutional rights. Thus, he claims the trial court erred when it denied his motion to suppress.

{¶16} Although Mr. Thompson relies heavily on trial testimony to support his arguments, that testimony "has no bearing upon a court's suppression ruling." *State v. Jackson*, 2012-Ohio-3785, ¶ 14 (9th Dist.). "[T]his Court must confine [its] review to the evidence presented during the pretrial suppression hearing[] because such evidence was the only evidence before the trial court when it ruled on the motion." (Internal quotations omitted.) *State v. Altomare*, 2024-Ohio-1721, ¶ 15 (9th Dist.), quoting *State v. Turner*, 2018-Ohio-3898, ¶ 11 (9th Dist.). Accordingly, we limit our review to the evidence presented at Mr. Thompson's suppression hearing. We will not consider evidence presented at his trial.

{¶17} Initially, we note that authorities conducted two searches in this matter. The first occurred when Task Force members arrested Mr. Thompson. That search resulted in the discovery of a large quantity of cash and methamphetamine. The second search occurred at a later date. That search resulted in the discovery of a firearm. During the suppression hearing, Mr. Thompson only challenged the first search that the authorities conducted. Information about the second search did not emerge until trial. Again, Mr. Thompson only cites trial testimony when referencing that search. Because this Court's review is limited to the evidence and argument presented at the suppression hearing, we will only consider his challenge to the first search that the authorities conducted. *See Altomare* at ¶ 15, quoting *Turner* at ¶ 11.

{¶18}  Mr. Thompson has not directly challenged any of the trial court's factual findings, and our review of the record confirms that they are supported by competent, credible evidence. As such, we accept the trial court's findings as true and consider its legal conclusions de novo. *See Burnside*, 2003-Ohio-5372, at ¶ 8.  *See also State v. Iloba*, 2021-Ohio-3700, ¶ 12 (9th Dist.).

{¶19}  R.C. 2967.131 authorizes warrantless searches of individuals under the supervision of the adult parole authority in certain instances.  At the time of Mr. Thompson's arrest, the statute provided, in relevant part:

> [D]uring a period of post-release control of a felon imposed under section 2967.28 of the Revised Code, authorized field officers of the authority who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the individual or felon, the place of residence of the individual or felon, and a motor vehicle, another item of tangible or intangible personal property, or other real property in which the individual or felon has a right, title, or interest or for which the individual or felon has the express or implied permission of a person with a right, title, or interest to use, occupy, or possess, if the field officers have reasonable grounds to believe that the individual or felon has left the state, is not abiding by the law, or otherwise is not complying with the terms and conditions of the individual's or felon's . . . post-release control . . . .

Former R.C. 2967.131(C).  The Ohio Supreme Court also has recognized that a parolee/probationer can waive his Fourth Amendment rights as a condition of release.  *Campbell*, 2022-Ohio-3626, at ¶ 12-14; *Benton*, 82 Ohio St.3d at 322.

{¶20}  At the suppression hearing, the State introduced the "Conditions of Supervision" to which Mr. Thompson agreed before being placed on post-release control.  Condition Number 7 provided as follows:

> I agree to the warrantless search of my person, motor vehicle, place of residence, personal property, or property that I have been given permission to use, by my supervising officer or other authorized personnel of the Ohio Department of Rehabilitation and Correction at any time.

Mr. Thompson initialed the foregoing provision. He also initialed provisions indicating that he had read the conditions of his post-release control, had received a copy of them, and had agreed to be bound by them. Mr. Thompson signed the Conditions of Supervision.

{¶21} As noted by the trial court, Officer Liggett worked for the Adult Parole Authority under the Ohio Department of Rehabilitation and Corrections. Accordingly, when the Task Force conducted a warrantless search, it did so in conjunction with authorized personnel from the Ohio Department of Rehabilitation and Corrections. The evidence showed that Task Force members were there to arrest Mr. Thompson on two active warrants, evidencing his failure to comply with the conditions of his post-release control. The female who lived at the house told Task Force members that Mr. Thompson was living there, and the evidence showed he was hiding in the southwest bedroom where the bookbag was found. To the extent Mr. Thompson claims there was no evidence that the bookbag belonged to him, an individual must have a reasonable expectation of privacy in an item to have standing to raise a Fourth Amendment challenge. *State v. Jackson*, 2004-Ohio-3206, ¶ 8. Accordingly, Mr. Thompson could only seek suppression of the evidence uncovered in the bookbag if he admitted a possessory interest in it. *See id. See also State v. Padilla*, 2015-Ohio-4220, ¶ 6 (9th Dist.). The evidence showed that Task Force members searched the southwest bedroom and the bookbag pursuant to the consent-to-search provision Mr. Thompson signed as a condition of his post-release control. Thus, the trial court correctly concluded that the search was lawful.

{¶22} Upon review, Mr. Thompson has not shown that the trial court erred when it denied his motion to suppress. As such, his sole assignment of error is overruled.

III.

{¶23}  Mr. Thompson's assignment of error is overruled.  The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, J.
SUTTON, J.
CONCUR.

APPEARANCES:

PAUL GRANT, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.