[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Campbell*, Slip Opinion No. 2022-Ohio-3626.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3626

THE STATE OF OHIO, APPELLANT, *v.* CAMPBELL, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Campbell*, Slip Opinion No. 2022-Ohio-3626.]**

*Criminal law—Fourth Amendment—R.C. 2951.02(A)—Exclusionary rule— Community-control conditions—Probation officer's suspicionless search of probationer's cell phone did not violate Fourth Amendment when probationer had consented to warrantless searches of his property as a condition of his community control—Probation officer's suspicionless search did violate statute requiring probation officers to have reasonable grounds that probationer was violating the law or conditions of community control before conducting search—Incriminating evidence collected from cell phone not subject to exclusionary rule when search violated statute but not Fourth Amendment—Court of appeals' judgment reversed.*

(No. 2020-1187—Submitted October 26, 2021—Decided October 13, 2022.)

APPEAL from the Court of Appeals for Fairfield County,

No. 2019 CA 00055, 2020-Ohio-4119.

_____

**DEWINE, J.**

{¶ 1} A probation officer conducted a random home-check on an individual subject to community control, searched his cell phone, and discovered child pornography. We are called on to answer one, and possibly two, questions. First, was the probation officer's search lawful? Second, if it was not, does the exclusionary rule apply to prohibit the use of the evidence from the search in a criminal prosecution?

{¶ 2} Central to our inquiry are several sources of legal authority. We begin with the Fourth Amendment's prohibition on unreasonable searches and seizures. We also must consider an Ohio statute, R.C. 2951.02(A), which authorizes a probation officer to search a probationer if there are "reasonable grounds to believe" that the probationer is violating the law or the terms of his community control. Finally, the probationer signed terms and conditions of probation at the start of his community-control period, by which he consented to "searches of my person, my property, my vehicle, and my residence at any time without a warrant."

{¶ 3} So how does all this play out? We conclude that there was no violation of the Fourth Amendment: under established caselaw, probationers who sign a consent-to-search agreement as a condition of community control may be subjected to random searches. But there was a violation of the Ohio statute—the officer had no "reasonable grounds" to believe that the probationer was violating the law or the terms of his community control. The consent provision doesn't help the state here—we conclude that regardless of the consent condition, the probation officer's authority to conduct the search was limited by the statute. Nonetheless, there is no basis to exclude the evidence that was discovered in the search. The exclusionary rule applies to constitutional violations, not statutory ones.

{¶ 4} In the proceeding below, the court of appeals determined that the evidence should have been suppressed based on the statutory violation. We reverse its judgment.

## I. After his early release from prison, Daniel Campbell is randomly searched by his probation officer

{¶ 5} Daniel Campbell was sentenced to prison for robbery. Prior to completing his prison term, he was granted judicial release and ordered to serve community control for the remainder of his sentence. As a condition of his release, Campbell was required to agree to terms and conditions of community control. Among other things, Campbell agreed as follows: "I consent to searches of my person, my property, my vehicle, and my residence at any time without a warrant. I understand this includes common areas and areas that are exclusive to me."

{¶ 6} Relying on this consent-to-search provision, Campbell's probation officer conducted a random search of his home. The officer did not suspect that Campbell had violated the conditions of community control or any other laws. Rather, she was training new probation officers and planned to reduce Campbell's level of supervision if all went well with the search. But during the search of his home, the officer discovered Campbell's cell phone and decided to go through its contents. It contained child pornography. This discovery led to the seizure of numerous other electronic devices, and ultimately, to Campbell being charged with nine felony offenses.

{¶ 7} Campbell moved to suppress the evidence that was uncovered, arguing that the suspicionless search violated the Fourth Amendment. The trial court denied the motion, concluding that the search was constitutional because Campbell had consented when he agreed to warrantless searches of his property as a condition of his community control. The court further held that even if the search had violated the Fourth Amendment, the good-faith exception to the exclusionary

rule would apply. After his suppression motion was denied, Campbell entered a no-contest plea to eight felony charges and the trial court imposed a prison term.

{¶ 8} The Fifth District Court of Appeals reversed the trial court's denial of Campbell's motion to suppress. It agreed that there was no constitutional violation but held that the search violated R.C. 2951.02(A)'s requirement that a probation officer may conduct a search only when there are "reasonable grounds to believe" that a probationer is in violation of the law or the conditions of community control. 2020-Ohio-4119, 157 N.E.3d 373, ¶ 25-28, 46. The court of appeals further concluded that the good-faith exception to the exclusionary rule did not apply. *Id.* at ¶ 50. We accepted jurisdiction over the state's discretionary appeal.

## II. Analysis

### A. *There was no Fourth Amendment Violation*

{¶ 9} The Fourth Amendment to the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *Accord* Ohio Constitution, Article I, Section 14.[1] In determining whether a search is reasonable under the Fourth Amendment, the United States Supreme Court has applied an approach that assesses " 'on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' " *Samson v. California*, 547 U.S. 843, 848, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), quoting *United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001).

{¶ 10} In *Samson*, the United States Supreme Court concluded that a suspicionless search of a parolee did not violate the Fourth Amendment. *Id.* at 857. A California statute required parolees to consent to searches " 'with or without cause' " as a condition of their parole. *Id.* at 846, quoting former Cal.Penal Code

---

1. Campbell has not developed an argument under Article I, Section 14 of the Ohio Constitution, and thus we have no occasion to consider that provision's application under the facts of this case.

3067. An officer conducted a suspicionless search of a parolee and found narcotics. *Id.* at 846-847. Balancing the privacy interests of the parolee against the state's substantial penological interest in supervising parolees, the court concluded that the suspicionless search was constitutional. *Id.* at 852-853, 857.

{¶ 11} This court had reached the same conclusion in *State v. Benton*, 82 Ohio St.3d 316, 317, 695 N.E.2d 757 (1998), a case decided almost a decade before *Samson.* There, we held that the Fourth Amendment did not prohibit "a random search of the residence of a parolee who, as a condition of parole, consented to warrantless searches by parole officers at any time." *Id*. at 317.

{¶ 12} Although *Samson* and *Benton* involved searches of parolees, "there is no material difference between probationers and parolees in the context of constitutional guarantees." *Benton* at 319, fn. 1, citing *State v. Roberts*, 32 Ohio St.3d 225, 229, 513 N.E.2d 720 (1987). As we have explained, "An individual sentenced to probation—or community control—does not possess the absolute liberty enjoyed by the general population, but rather finds his liberty dependent upon the conditions and restrictions of his probation." *State v. Chapman*, 163 Ohio St.3d 290, 2020-Ohio-6730, 170 N.E.3d 6, ¶ 12. Thus, we have little difficulty finding that there is no Fourth Amendment violation when a probation officer conducts a suspicionless search pursuant to a consent-to-search provision agreed to as a condition of community control.

{¶ 13} Campbell contends that the consent-to-search provision that he signed does not encompass his cell phone. We disagree. He consented to "searches of my person, my property, my vehicle, and my residence at any time without a warrant." Plainly, *Campbell's* "*property*" encompasses his cell phone.

{¶ 14} In arguing that the search violated the Fourth Amendment, Campbell relies on *United States v. Fletcher*, a case in which the Sixth Circuit Court of Appeals applied the Fourth Amendment balancing approach and concluded that a search of a probationer's cell phone was unreasonable. 978 F.3d 1009, 1019 (6th

5

Cir.2020). But that case is different from ours. There, the consent-to-search condition of supervision covered the probationer's "person," "motor vehicle," and "residence," but it made no mention of other property. *Id.* Central to the court's analysis was the fact that the consent agreement did not "clearly or unambiguously" extend to a search of the probationer's cell phone. *Id.* In contrast, Campbell explicitly consented to a search of his property, something that inarguably encompasses his cell phone. Thus, by virtue of his status as a probationer, including the plain terms of the consent-to-search form, Campbell "did not have an expectation of privacy that society would recognize as legitimate," *Samson*, 547 U.S. at 852, 126 S.Ct. 2193, 165 L.Ed.2d 250; *see also United States v. Tessier*, 814 F.3d 432, 433, 435 (6th Cir.2016) (upholding suspicionless search of the computer of a probationer who had consented to searches of his "person, vehicle, property, or place of residence" as a condition of probation).

## B. There was a violation of R.C. 2951.02(A)

{¶ 15} The constitutional inquiry is not the end of the matter. We also must grapple with R.C. 2951.02(A), which provides:

> [D]uring the period of a felony offender's nonresidential sanction, authorized probation officers who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the offender, the place of residence of the offender, and a motor vehicle, another item of tangible or intangible personal property, or other real property in which the offender has a right, title, or interest * * * if the probation officers have reasonable grounds to believe that the offender is not abiding by the law or otherwise is not complying with the conditions of * * * the felony offender's nonresidential sanction.

6

**{¶ 16}** Because probation officers are statutory creations, *see* R.C. 2301.27, they "have no more authority than that conferred upon them by statute, or what is clearly implied therefrom." *Hall v. Lakeview Local School Dist. Bd. of Edn.*, 63 Ohio St.3d 380, 383, 588 N.E.2d 785 (1992). R.C. 2951.02(A) authorizes warrantless searches of probationers, so long as the probation officer has "reasonable grounds" to believe that the probationer is violating the law or conditions of community control. Because Campbell's probation officer lacked the necessary reasonable grounds to search Campbell's cell phone, her search was not authorized by R.C. 2951.02(A).

**{¶ 17}** The question then becomes, may the state, by requiring a probationer to enter into a consent-to-search agreement as a condition of community control, authorize probation officers to conduct searches in situations beyond those described in R.C. 2951.02(A)? We think not. In enacting R.C. 2951.02(A), the legislature specifically defined the level of suspicion ("reasonable grounds") required to authorize a probation officer to search a probationer. Implicit in this authorization was the denial of authority to search a probationer without reasonable grounds. If that were not so, and probation officers were nonetheless authorized to conduct searches without reasonable grounds for doing so, then R.C. 2951.02(A) would be nothing more than advice.

**{¶ 18}** It does not matter that Campbell had been required to consent to the search as a condition of his community control, because the probation officer was still constrained by the statutory limits of her authority. Consent and authority are not the same. If Campbell had given his consent for the probation officer to take his wallet, he might then expect his wallet to be taken, but that would not mean that the probation officer was authorized to take it. So too here. Campbell's consent to random searches as a condition of his community-control sanctions limited his legitimate expectation of privacy but did not grant the probation officer additional authority.

**{¶ 19}** When the probation officer searched Campbell's cell phone without reasonable grounds to believe that he had violated the law or the conditions of probation, she exceeded the scope of her authority.

## C. Should the evidence be excluded?

**{¶ 20}** There remains one final question: whether excluding the evidence obtained through the cell-phone search is an appropriate remedy for this statutory violation. Applying established precedent, we find that excluding the evidence is not appropriate.

**{¶ 21}** Because this case does not involve a Fourth Amendment violation, the exclusionary rule associated with the Fourth Amendment does not apply. As the United States Supreme Court explained in *Virginia v. Moore*, "it is not the province of the Fourth Amendment to enforce state law," and thus, the Fourth Amendment's exclusionary rule does not apply when there has been no constitutional violation. 553 U.S. 164, 178, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008).

**{¶ 22}** Similarly, this court has long held that the exclusionary rule applies "to violations of a constitutional nature only." *Kettering v. Hollen*, 64 Ohio St.2d 232, 234, 416 N.E.2d 598 (1980). *Accord State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 32; *State v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316, 902 N.E.2d 464, ¶ 21; *State v. Myers*, 26 Ohio St.2d 190, 196-197, 271 N.E.2d 245 (1971). Thus, we will not apply the exclusionary rule "to statutory violations falling short of constitutional violations, absent a legislative mandate requiring the application of the exclusionary rule." *Kettering* at 234; *see also State v. French*, 72 Ohio St.3d 446, 449, 650 N.E.2d 887 (1995). A plain reading of R.C. 2951.02(A) reveals no such legislative mandate to impose an exclusionary remedy for a violation of the statute's reasonable-grounds requirement. *Compare* R.C. 2933.63(A) (authorizing, among other things, the suppression of evidence derived

from an unlawful wiretap). Absent such a legislative mandate, this court is without authority to write an exclusionary remedy into the statute.

{¶ 23} Because there is no basis in either the statute or the United States Constitution to apply the exclusionary rule to violations of R.C. 2951.02(A), the court of appeals erred by concluding that Campbell's motion to suppress should have been granted and reversing the contrary decision of the trial court. Our conclusion that the exclusionary rule does not apply makes it unnecessary to address whether the probation officer's search would have fallen under the good-faith exception to that rule.

### III. Conclusion

{¶ 24} There was no constitutional violation in this case—only a statutory one. The Fourth Amendment did not prohibit the suspicionless search of Campbell's cell phone. Because we are confronted with a statutory violation only, there is no basis to exclude the evidence obtained as a result of the search. We reverse the judgment of the Fifth District Court of Appeals and reinstate Campbell's conviction.

Judgment reversed.

O'CONNOR, C.J., and KENNEDY, FISCHER, and DONNELLY, JJ., concur.

BRUNNER, J., concurs in judgment only, with an opinion.

STEWART, J., dissents, with an opinion.

_____

**BRUNNER, J., concurring in judgment only.**

{¶ 25} Based on existing precedent and appellee Daniel Campbell's not challenging or distinguishing that precedent, I agree with the majority that the trial court ruled consistently with the applicable law when it refused to suppress the fruits of the search of Campbell's residence and cellular phones. However, insofar as the majority finds a violation of R.C. 2951.02(A), relating to a probation officer's

authorization to search an offender, I would not find that the statute applied in Campbell's situation.

{¶ 26} Campbell executed a blanket consent related to community-control supervision after judicial release. This written consent included a provision that said, "I consent to searches of my person, my property, my vehicle, and my residence at any time without a warrant." Though cellular phones are private property requiring a warrant to search in most circumstances, *see Riley v. California*, 573 U.S. 373, 401, 134 S.Ct. 2473, 189 L.Ed.2d 439 (2014), they are nevertheless "property," and a warrant is not needed when consent is given. *See United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Schneckloth v. Bustamonte*, 412 U.S. 218, 228-229, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Here, Campbell consented in writing to warrantless searches of his "property," and he thus consented to the search of his cellular phone. And though R.C. 2951.02(A) permits probation officers to search the homes, automobiles, personal property, and the person of offenders under community-control supervision "with or without a warrant" if the officers "have reasonable grounds" to believe the offender is violating the law or conditions of his community control, no part of R.C. 2951.02 suggests that officers may not also search based on consent if consent has been given by the offender.

{¶ 27} While "consent" may be questionable when a prison inmate who is granted judicial release faces a choice between providing blanket consent to warrantless searches at any time or most likely returning to prison if he does not give his consent, the language Campbell signed was that he consented. Both this court and the United States Supreme Court seem to have accepted the constitutionality of this Fourth Amendment tradeoff for community supervision, and Campbell has not asked us to distinguish his case from that precedent or to overrule it, *see Samson v. California*, 547 U.S. 843, 846, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006); *United States v. Knights*, 534 U.S. 112, 118, 122 S.Ct. 587,

151 L.Ed.2d 497 (2001); *State v. Benton*, 82 Ohio St.3d 316, 321, 695 N.E.2d 757 (1998); nor has he asked that we hold that the circumstances of his consent violate the Ohio Constitution, *see* Article I, Section 14, Ohio Constitution. For these reasons, despite my concerns about the manner and circumstances by which Campbell's consent was obtained, I concur in the judgment of the majority.

_____

**STEWART, dissenting.**

{¶ 28} I agree with the majority opinion that there was a violation of R.C. 2951.02(A) when a probation officer conducted a suspicionless search of appellee Daniel Campbell's home and property. I likewise agree that the exclusionary rule does not apply to bar evidence obtained as the result of a search that violated R.C. 2951.02(A). Nonetheless, the evidence in this case should have been excluded because Campbell's Fourth Amendment rights were violated when the probation officer searched his cell phone. Because the majority opinion finds otherwise, I dissent.

{¶ 29} The majority concludes that there is no violation of the Fourth Amendment when a probation officer conducts a suspicionless search of a probationer's cell phone pursuant to a consent-to-search provision agreed to as a condition of the person's community control. I would reach the same conclusion if the consent-to-search provision contained language that clearly and unambiguously applied to the search of a cell phone. But the consent-to-search provision here did not clearly and unambiguously apply to Campbell's cell phone.

{¶ 30} The majority points to the fact that Campbell signed a form that outlined the terms and conditions of his community control, which included Campbell's consent to search his "property * * * at any time without a warrant." The majority states, "Plainly, *Campbell's 'property'* encompasses his cell phone." (Emphasis sic.) Majority opinion, ¶ 13. And it bases its decision solely on its interpretation of the word "property." Although not entirely unreasonable, in the

context of this case, the majority's reliance on this broad interpretation and basic understanding of the word "property" is misplaced. This is because the law has routinely treated searches of cell phones differently than searches of personal property in general.

{¶ 31} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *See also* Article I, Section 14, Ohio Constitution. "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' " *United States v. Knights*, 534 U.S. 112, 118-119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). Courts " 'examin[e] the totality of the circumstances' to determine whether a search is reasonable within the meaning of the Fourth Amendment." (Brackets sic.) *Samson v. California*, 547 U.S. 843, 848, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), quoting *Knights* at 118.

{¶ 32} Consent-to-search provisions that are included as part of probation conditions are valid if they are clear and unambiguous. *See Knights* at 119-120 (probationer's reasonable expectation of privacy was "significantly diminished" when the "probation order clearly expressed the search condition" and probationer "was unambiguously informed" of that condition). If the consent-to-search condition is clear and unambiguous, then the person does not "have an expectation of privacy that society would recognize as legitimate." *Samson* at 852.

{¶ 33} Regarding the consent-to-search provision here, the majority observes that Campbell consented to "searches of [his] person, [his] property, [his] vehicle, and [his] residence at any time without a warrant," and thus "*Campbell's 'property'* " "[p]lainly" and "inarguably" encompassed his cell phone, so there was

no Fourth Amendment violation. (Emphasis sic.) Majority opinion at ¶ 13, 14. However, because courts recognize that searching the contents of a cell phone is different from searching other property, the issue is not as plain or clear as the majority views it. Due to the unique nature of a cell phone, Campbell's generic consent to a search of his "property" did not clearly and unambiguously include an agreement to allow the search of the contents of his cell phone. Without such a clear consent-to-search condition, Campbell still retained an expectation of privacy in the contents of his cell phone that society recognizes as legitimate.

{¶ 34} In *State v. Smith*, this court described the "unique nature" of cell phones "as multifunctional tools" that "defy easy categorization." 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 22. We explained that cell phones "have the ability to transmit large amounts of data in various forms, likening them to laptop computers, which are entitled to a higher expectation of privacy." *Id*. We then held that "because a person has a high expectation of privacy in a cell phone's contents, police must then obtain a warrant before intruding into the phone's contents." *Id*. at 23.

{¶ 35} In *Riley v. California*, the United States Supreme Court unanimously held that with respect to "data on cell phones," police "must generally secure a warrant before conducting a search" incident to a lawful arrest. 573 U.S. 373, 386, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014). The *Riley* court stated that modern cell phones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Id*. at 385. The court explained that it "generally determine[s] whether to exempt a given type of search from the warrant requirement 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' " *Id*., quoting *Houghton*, 526 U.S. at 300, 119 S.Ct. 1297, 143 L.Ed.2d 408.

{¶ 36} In *Riley*, the court discussed *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), which held that an officer's search of a suspect incident to a lawful arrest did not violate the Fourth Amendment. But the court explained, "The fact that an arrestee has diminished privacy interests does not mean that the Fourth Amendment falls out of the picture entirely." *Riley* at 392. "To the contrary, when 'privacy-related concerns are weighty enough' a 'search may require a warrant, notwithstanding the diminished expectations of privacy of the arrestee.' " *Id.*, quoting *Maryland v. King*, 569 U.S. 435, 463, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013). The court compared searches incident to an arrest with warrantless searches of cell phones, stating:

> [W]hile *Robinson*'s categorical rule strikes the appropriate balance in the context of physical objects, neither of its rationales has much force with respect to digital content on cell phones. On the government interest side, *Robinson* concluded that the two risks identified in *Chimel* [*v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)]—harm to officers and destruction of evidence—are present in all custodial arrests. There are no comparable risks when the search is of digital data. In addition, *Robinson* regarded any privacy interests retained by an individual after arrest as significantly diminished by the fact of the arrest itself. Cell phones, however, place vast quantities of personal information literally in the hands of individuals. A search of the information on a cell phone bears little resemblance to the type of brief physical search considered in *Robinson*.

*Id*. at 386.

**{¶ 37}** The *Riley* court went on to describe the unique characteristics of cell phones, which of course, are numerous. The court discussed the storage capacity of smart phones, which "translates to millions of pages of text, thousands of pictures, or hundreds of videos." *Id*. at 394. The court further explained:

> The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two * * * tucked into a wallet. * * * [T]he data on a phone can date back to the purchase of the phone, or even earlier. A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would not carry a record of all his communications with Mr. Jones for the past several months, as would routinely be kept on a phone.

*Id*. at 394-395.

**{¶ 38}** The *Riley* court also discussed how cell phones differ from other personal items—not only because cell phones contain a vast amount of private information—but because of how pervasive they are in society, with more than 90 percent of American adults owning one. 573 U.S. at 395, 134 S.Ct. 2473, 189 L.Ed.2d 430. Because cell phones are ubiquitous, allowing law-enforcement officers to scrutinize the "sensitive personal information" contained within them "is quite different from allowing [officers] to search a personal item or two in the occasional case." *Id*.

**{¶ 39}** Similarly to one who has been arrested, a person who is serving probation likewise has diminished privacy interests. But also relevant is the fact that searching the contents of a cell phone bears little to no resemblance to the types of general searches contemplated by the boilerplate language of the consent-to-search condition in this case. Particularly, as the majority opinion acknowledges,

the probation officer in this case had no reasonable suspicion of criminal activity to conduct a search in the first place.

**{¶ 40}** The majority disagrees with Campbell that a recent Sixth Circuit Court of Appeals case, *United States v. Fletcher*, 978 F.3d 1009 (6th Cir.2020), supports Campbell's argument that the search of his cell phone violated the Fourth Amendment. *See* majority opinion at ¶ 14. While *Fletcher* is not entirely on point, it is instructive. In *Fletcher*, the defendant had been convicted in an Ohio court of importuning a minor and was sentenced to five years of community-control sanctions (the federal court improperly referred to it as probation). *Id.* at 1013. "The terms of [community control] prohibited him from contacting the victim of his offense, contacting any minors unsupervised, and possessing any kind of pornography." *Id.* An additional condition provided that Fletcher " '[a]greed to a search without warrant of [his] person, [his] motor vehicle or [his] place of residence by a Probation Officer at any time.' " (Brackets sic.) *Id.*

**{¶ 41}** "During a routine visit with his probation officer, the officer noticed that Fletcher had two phones." *Id.* The officer searched one of the phones and saw child pornography. He then turned off the phone and contacted a detective, who obtained a warrant to search the phone. The detective then discovered "child pornography that had been downloaded from the internet and that had been filmed by the phone itself." *Id.* Fletcher was charged in state court with multiple counts of pandering sexually oriented matter involving a minor. Fletcher was also charged in federal court with conspiracy to produce child pornography and production of child pornography. In Fletcher's federal case, "[h]e filed a motion to suppress the evidence recovered from his cell phone, which the district court denied." *Id.* at 1014. The district court found Fletcher guilty of both child-pornography offenses. Fletcher appealed the district court's denial of his motion to suppress.

**{¶ 42}** The Sixth Circuit reversed the district court and held that the government's legitimate interests, "ensuring that Fletcher successfully complete[d]

probation and refrain[ed] from engaging in criminal activity," did not outweigh Fletcher's expectation of privacy. *Id*. at 1019. Although Fletcher had agreed to a warrantless search of his person, motor vehicle, and residence as part of his community control, the Sixth Circuit explained that "[n]one of these terms clearly or unambiguously includes a cell phone." *Id.*, citing *United States v. Lara*, 815 F.3d 605, 610 (9th Cir.2016). In *Lara*, a probationer agreed to a search of, among other things, his "property." *Lara* at 607. The Ninth Circuit Court of Appeals held that this term did not "clearly or unambiguously encompass[] his cell phone and the information contained therein." *Id*. at 610.

{¶ 43} Here, the majority opinion distinguishes *Fletcher* from the present case because the consent-to-search condition in *Fletcher* "covered the probationer's 'person,' 'motor vehicle,' and 'residence,' but it made no mention of other property." Majority opinion at ¶ 14, quoting *Fletcher*, 978 F.3d at 1019. The majority concludes that because "Campbell explicitly consented to a search of his property, something that inarguably encompasses his cell phone," he " 'did not have an expectation of privacy that society would recognize as legitimate.' " Majority opinion at ¶ 14, quoting *Samson*, 547 U.S. at 852, 126 S.Ct. 2193, 165 L.Ed.2d 250. The Sixth Circuit, however, did not state anywhere in its opinion that Fletcher's cell phone should be excluded because the consent-to-search condition did not include an agreement to search his "property." And more importantly, in support of its holding, the Sixth Circuit cited to *Lara*, a case in which the consent-to-search agreement, like Campbell's, allowed for a warrantless search of "property" in general, which the *Lara* court determined did *not* include a cell phone. *Fletcher* at 1018-1019, citing *Lara* at 610-611.

{¶ 44} Because courts have recognized the unique nature of cell phones, I would conclude that a consent-to-search condition included as part of a person's community-control sanctions must clearly and unambiguously include cell phones before a probation officer may search the person's cell phone without a warrant. I

would therefore conclude that Campbell retained a legitimate expectation of privacy in the contents of his cell phone and that his Fourth Amendment rights were violated when the probation officer searched the phone without first obtaining a warrant.

{¶ 45} I would also conclude that the evidence should have been excluded under the exclusionary rule because Campbell's Fourth Amendment rights were violated. I further agree with the Sixth Circuit Court of Appeals that the good-faith exception to the exclusionary rule does not apply under these circumstances. As the court explained in *Fletcher*:

> Application of the exclusionary rule here will deter suspicionless searches of a probationer's cell phone post-*Riley* where the terms of a probation agreement do not authorize such a search [of a probationer's cell phone]. Application of the rule would also encourage the future inclusion in probation agreements of clear and unambiguous terms regarding the *distinct category* of cell phones.

*Id*. at 1020. (Emphasis added.)

{¶ 46} I would therefore affirm the Fifth District's decision reversing the trial court's denial of Campbell's motion to suppress, albeit for different reasons. The search of Campbell's cell phone was unlawful, and the exclusionary rule should bar the admission of the evidence that was the fruit of that unlawful search. Further, the evidence from the subsequent search of Campbell's other electronic devices should be excluded because the subsequent search was itself the product of the initial unlawful cell-phone search. Because the majority opinion concludes otherwise, I respectfully dissent.

———————————

R. Kyle Witt, Fairfield County Prosecuting Attorney, and Christopher A. Reamer, Assistant Prosecuting Attorney, for appellant.

Conrad & Wood, L.L.C., and Scott P. Wood, for appellee.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Zachery P. Keller and John Rockenbach, Deputy Solicitors General, urging reversal for amicus curiae Attorney General Dave Yost.

G. Gary Tyack, Franklin County Prosecuting Attorney, and Seth L. Gilbert, Chief Counsel, Appeals Division, urging reversal for amicus curiae Ohio Prosecuting Attorneys Association.

_____