[Cite as *State v. Clardy*, 2022-Ohio-4300.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210262 |
|  |  | TRIAL NO. B-1901055 |
| Plaintiff-Appellant, | : |  |
| vs. | : |  |
|  |  | *O P I N I O N.* |
| RONNY CLARDY, | : |  |
| Defendant-Appellee. | : |  |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Case Remanded

Date of Judgment Entry on Appeal: December 2, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman*, Chief Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellee.

**Bock, Judge.**

**{¶1}** Appellant-plaintiff state of Ohio appeals the trial court's decision granting defendant-appellee Ronny Clardy's motion to suppress evidence. We reverse the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion.

## I.     Facts and Procedure

**{¶2}** Clardy was on probation for a felony conviction from July 2018, for which he signed a form containing the rules of community control ("probation").[1] Paragraph nine of the probation rules states:

I am subject to search in accordance with Ohio Revised Code section

2951.02. The search includes, but is not limited to, the search of my

person, place of residence, cell phone, purses and other packages.

**{¶3}** In February 2019, Clardy's probation officer, Michael Schad, enlisted the assistance of Cincinnati Police Officers Gould and Rice, and other officers, to surveil Clardy because he suspected that Clardy was selling narcotics out of an apartment located on Montgomery Road. Clardy had not registered that address with the probation department. The officers stopped Clardy for allegedly performing a U-turn, and because the vehicle had illegally-tinted windows.

**{¶4}** Schad searched Clardy and found $340 in cash and a set of keys. After officers arrested Clardy, Schad used the keys to search the Montgomery Road

---

[1] "Basic probation supervision" means a requirement that the offender maintain contact with a person appointed to supervise the offender in accordance with sanctions imposed by the court. R.C. 2929.01. Community control under Ohio's current statutory scheme is the functional equivalent of probation under the former statutes. *State v. Walton*, 9th Dist. Lorain No. 09CA009588, 2009-Ohio-6703, ¶ 5. For ease of discussion, we refer to people under community control as "probationers."

apartment. He seized cocaine, drug paraphernalia, and cash. When Schad later searched the residence that Clardy had registered with probation, he recovered a digital scale and $1,420 in cash.

## Clardy moved to suppress the evidence

{¶5} Clardy argued in his motion that officers lacked probable cause to stop and arrest Clardy and that there were no reasonable grounds to search his person during the traffic stop. Clardy further argued that the officers' searches and seizures within the apartment were illegal because the search of his person did not produce any contraband or weapons, and officers illegally obtained the key that was used to access the Montgomery Road apartment.

## Officers testified at the hearing

{¶6} Schad testified that he had heard "from a few different sources that [Montgomery Road] was [Clardy's] residence," Clardy's vehicle was parked at the apartment "multiple times," including during the week of the arrest, and no one else was seen coming and going from the apartment.

{¶7} Officer Corey Gould testified that the day before Clardy's arrest, Schad asked him to check the Montgomery Road address for a gray Dodge Dart. Gould followed Clardy, who was driving a Dodge Dart, to the Montgomery Road address and waited in a lot across the street. He saw Clardy leave the apartment once and saw no one else go in or come out.

{¶8} Officer Jason Rice testified that one of the officers used the radio to ask Rice to pull Clardy over on a traffic stop, but Rice did not remember who asked him because any one of "three or four plainclothes officers" or "three or four probation officers" could have made the request, including Schad and Gould. Rice stated that the

3

officers on the investigation were on a "tactical radio" channel, which dispatch was monitoring, and only they could hear the report about Clardy's alleged U-turn. Rice conceded that Clardy was not stopped for a traffic violation, but to detain him while Schad conducted a probation investigation. The state also conceded that the stop was not for a traffic violation; it was a pretextual stop to give Schad an opportunity to conduct the probation investigation. Clardy was not cited for the U-turn or the tint, and the police report did not mention either.

{¶9}   Schad testified that he was driving behind Officer Jason Rice in an unmarked vehicle before Rice pulled Clardy over. Schad stated that he did not see Clardy make a U-turn, but there were "multiple officers" on the radio channel that they were using when someone "said over the radio that [Clardy] had made a U-turn on Kennedy Avenue."

{¶10} Schad placed Clardy in custody for a probation investigation. Schad testified that he found nothing incriminating when he searched Clardy—just $340 in cash and keys. Schad characterized Clardy as "deflective" when Schad asked him what he was doing and from where he was coming. When Schad asked Clardy whether any of the keys that Clardy was carrying accessed the Montgomery Road apartment, he responded "they might." Schad stated that he became suspicious when Clardy did not answer his questions about the apartment. While Clardy had never stated that the apartment was his residence, Schad believed that Clardy had two residences from "[t]he fact that he was seen there on multiple occasions. We had separate * * * people give us information that corroborated the information that he was residing there as well." He added that Clardy had a key that accessed the apartment, there was a

briefcase containing paperwork with Clardy's name on it in the apartment, and the Duke Energy bill (obtained after the search) was addressed to Clardy.

{¶11} Clardy asserted that the state lacked probable cause and reasonable suspicion. The trial court allowed the parties to brief the constitutional issues as to the traffic stop, the seizure of the keys, and the search of the Montgomery Road apartment.

<u>The trial court granted Clardy's motion</u>

{¶12} The trial court suppressed all evidence found during the search and seizure. It found that Clardy had standing to challenge the warrantless search of the apartment.[2] The court determined that the search was improper because 1.) the probation rules did not provide proper notice that Clardy was subject to warrantless searches under R.C. 2951.02(A), and 2.) the search was not supported by reasonable grounds as required by R.C. 2951.02(A).

## II.     **Law and Analysis**

{¶13} In its sole assignment of error, the state argues that Clardy was properly notified in writing that he consented to certain warrantless searches by authorized probation officers as a part of being on community control. The state contends that there were reasonable grounds to believe that Clardy was selling narcotics, he never provided the address of the Montgomery Road apartment to probation, and he was "deflective" during the traffic stop when Schad asked him what he was doing and from where he was coming. The state asserts that Clardy was "often seen at the * * * Montgomery Road apartment, which suggests that Clardy used [it] as his address" and that "Clardy had a key to [the apartment], a bag with personal papers there, and a

---

[2] The state disputes Clardy's standing to challenge the search of the apartment, not the search of Clardy's person.

Duke Energy bill was mailed to him at that address," which is probative evidence that Clardy resided at the Montgomery Road apartment.

### A. The trial court abused its discretion

{¶14} Crim.R. 47 provides:

An application to the court for an order shall be by motion. A motion, other than one made during trial or hearing, shall be in writing unless the court permits it to be made orally. It shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought.

{¶15} It is well settled that a motion to suppress evidence must specify the grounds upon which the motion is based so that the prosecutor may prepare the state's case and the court may know the grounds of the challenge to rule on evidentiary issues at the hearing and properly dispose of the merits. *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1998).

{¶16} In *Wallace*, the defendant's motion failed to clarify whether the alleged illegality was due to a violation of the Fourth Amendment. The court found that Crim.R. 47 requires the defendant's motion to provide the state notice of the specific legal and factual grounds upon which the validity of the search and seizure is challenged. *Id.* at 219. The court held that to suppress evidence obtained via a warrantless search or seizure, the defendant must 1.) demonstrate the lack of a warrant, and 2.) raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the state notice of its basis. *Id.*

{¶17} In *State v. Byrnes*, 2d Dist. Montgomery No. 25860, 2014-Ohio-1274, Byrnes filed a motion to suppress all evidence from a traffic stop where he was charged

with operating a motor vehicle while under the influence of alcohol and other traffic violations. *Id.* at ¶ 2. The motion specifically addressed only whether the officer had reasonable articulable suspicion and probable cause to stop Byrnes. *Id.* at ¶ 3. But Byrnes made no argument involving his subsequent detention for sobriety testing. *Id.* Byrnes confirmed at the hearing that his challenge was limited to the issues raised in his motion. *Id.* at ¶ 4. But the court granted the motion to suppress based on the police unlawfully continuing to detain Byrnes *Id.* at ¶ 5. The appellate court reversed because Byrnes's motion to suppress did not present any argument regarding the post-stop detention. *Id.* at ¶ 13. The court determined that the state was prejudiced by the trial court's error because it was not prepared to address the post-stop detention. *Id* at 14.

{¶18}  Clardy's motion to suppress did not argue that the probation rules failed to provide notice that he would be subject to warrantless searches. Thus, the state was not prepared to address the issue. Guided by *Wallace* and *Byrnes*, we hold that the trial court abused its discretion by ruling that the probation rules did not provide Clardy notice that he, as a probationer, was subject to warrantless searches. Although the trial court permitted the parties to file post-hearing briefs, the court nevertheless abused its discretion. Crim.R. 47 and Ohio case law are clear that the court may only rule on issues that the defendant raises, with particularity, in his motion.

B.  The Ohio Supreme Court settled the reasonable-grounds issue

{¶19}  The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Article I, Section 14 of the Ohio Constitution contains virtually identical language.

{¶20} R.C. 2951.02(A) provides that a probation officer may conduct random, warrantless searches of a probationer under the terms of a consent agreement if the probation officer has "reasonable grounds to believe that the offender is not abiding by the law or otherwise is not complying with the conditions."

{¶21} Recently, the Supreme Court of Ohio considered the effect of an officer's violation of R.C. 2951.02(A). *State v. Campbell*, Slip Opinion No. 2022-Ohio-3626. First, it determined "there is no Fourth Amendment violation when a probation officer conducts a suspicionless search pursuant to a consent-to-search provision agreed to as a condition of community control." *Id.* at ¶ 12. Next, the court determined that, regardless of whether a probationer consents to suspicionless searches, an officer violates R.C. 2951.02(A) if the officer conducts a search without reasonable grounds to believe that the probationer violated the law or conditions of probation. *Id.* at ¶ 19. But the court determined that excluding the evidence resulting from this type of illegal search is inappropriate because the exclusionary rule applies only to constitutional violations. *Id.* at ¶ 20. Because R.C. 2951.02(A) does not impose an exclusionary remedy for a violation of the reasonable-grounds requirement, there is no basis for the evidence to be excluded. *Id.* at ¶ 23.

{¶22} We need not determine whether officers violated R.C. 2951.02(A) because even if they did violate the statute, under *Campbell*, the evidence cannot be excluded. Therefore, we sustain the state's assignment of error.

### III. Conclusion

{¶23} The trial court abused its discretion by ruling on an issue that was not raised in Clardy's motion to suppress. And if officers violated R.C. 2951.02(A), there is no exclusionary remedy. We reverse the trial court's judgment and remand this case

8

to the trial court for further proceedings.

Judgment reversed and case remanded.

**MYERS, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.