[Cite as *N. Olmsted v. Donnelly*, 2023-Ohio-3712.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF OLMSTED TOWNSHIP,　　　:

　　Plaintiff-Appellee,　　　　:

　　　　　　　　　　　　　　　　　　No. 112334

　v.　　　　　　　　　　　　　:

DIANE DONNELLY,　　　　　　　:

　　Defendant-Appellant.　　　:

_____

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 12, 2023

_____

Criminal Appeal from the Berea Municipal Court
Case No. 22CRB01331

_____

### *Appearances:*

Holland and Muirden and J. Jeffrey Holland, *for appellee.*

Michela Huth, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Diane Donnelly, appeals from the trial court's judgment entry that imposed as a condition of probation that she is "subject to random inspection by [the] APL or Human[e] Society or any other entity performing similar services, to assure compliance." For the reasons that follow, we affirm.

{¶ 2} In 2022, Donnelly was named in a four-count complaint, charging her with cruelty to animals in violation of R.C. 959.13, misdemeanors of the second degree. The complaints alleged that "on or about July 1, 2022 through August 19, 2022 * * * Donnelly, who was the owner or caretaker of a companion animal, did negligently torture, torment, or commit an act of cruelty of [15 named dogs]."

{¶ 3} On December 1, 2022, and with the assistance of counsel, Donnelly entered into a plea agreement with the prosecutor in which she agreed to plead no contest to Count 1 of the complaint and the remaining counts would be dismissed. Donnelly's attorney advised the court that Donnelly would be "waiving a reading of the facts and explanation of circumstances." (Tr. 5.) Following the trial court's explanation of what a plea of "no contest" means, Donnelly responded "yes" to the court's question of whether she "understood that." (Tr. 3.) The court then reviewed the complaint and found her guilty of the offense.

{¶ 4} When the court inquired whether it should continue the matter for the purpose of obtaining a presentence-investigation report ("PSI") to assist the court with sentencing, Donnelly's attorney advised the court, "Judge, I believe that we have a recommended sentence." (Tr. 6.) The prosecutor agreed, stating, "Your Honor, the joint recommendation in this case is five years of non-reporting probation, during which time Ms. Donnelly should not own, keep, nor reside with more than four spayed or neutered dogs. Those dogs are to be kept inside of her residence in a humane, sanitary, and lawful manner. * * * In addition, she shall undergo random inspections by the APL or other humane society to ensure

compliance with that term." (Tr. 6-8.)[1] Donnelly did not make any statements about these conditions. The attorneys and the trial court discussed that four dogs would be returned to Donnelly and when asked, Donnelly provided the names of the four dogs to the court. Following this interaction, the court asked if "everybody [was] happy," and both Donnelly's counsel and the prosecutor responded by thanking the trial judge; Donnelly, herself, did not make any comments. (Tr. 10-11.)

{¶ 5} The trial court's judgment entry of conviction provided the following sentence:

1. A fine of $50.00 plus all costs $50.00 of fine suspended.

2. Defendant shall be placed on Basic 5 Yr Probation.

3. May not own or reside with more than four dogs that have been spayed or neutered, they are kept in humane, sanitary and lawful conditions within the residence.

4. Subject to random inspection by APL or Human[e] Society or any other entity performing similar services, to assure compliance.

5. Remaining animals to be forfeited excluding Swade, Lux, Dash, and Star. The previously paid bond on the companion civil matter shall be forfeited to Animal Protective League.

6. Defendant advised that failure to comply with any and all conditions of Probation will result in the imposition of the maximum penalties allowed under the charge of which defendant was convicted.

{¶ 6} Donnelly now appeals, contending in her sole assignment of error that the trial court erred by requiring her, as part of the sentence and accompanying

---

[1] The prosecutor set forth additional conditions, including forfeiture of the posted bond and of 11 of the dogs removed from Donnelly's possession; Donnelly was permitted to retain possession of four dogs, but only after those dogs were spayed or neutered.

community-control conditions, to subject herself and her home to random probation inspections. Appellee contends, however, that Donnelly consented to random searches as part of an agreed, recommended sentence that the court imposed and thus, cannot challenge this condition on appeal. Appellee maintains that this court should reject her assignment of error on the basis of invited error.

{¶ 7} A trial court enjoys broad discretion in imposing sentence on a misdemeanor offense. *Cleveland v. Meehan*, 8th Dist. Cuyahoga No. 100202, 2014-Ohio-2265, ¶ 7. Accordingly, an appellate court reviews a trial court's sentence on a misdemeanor violation under an abuse-of-discretion standard. R.C. 2929.22; *Cleveland v. Peoples*, 8th Dist. Cuyahoga No. 100955, 2015-Ohio-674, ¶ 13. However, this discretion is not unfettered and still must comport with the law. In fact, in *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463 ¶ 38, the Ohio Supreme Court reiterated that "a court does not have discretion to misapply the law."[2]

{¶ 8} At the time when Donnelly pleaded no contest and was sentenced, R.C. 2951.02(A) provided, in relevant part:

> During the period of a misdemeanor offender's community control sanction or during the period of a felony offender's nonresidential sanction, authorized probation officers who are engaged within the

---

[2] Unlike felony sentencing review that limits appellate review for agreed sentences, the Revised Code does not offer similar guidance for appellate review of misdemeanor sentences. For felonies, an agreed sentence "is not subject to review under [R.C. 2953.08(D)] if the sentence is *authorized by law*, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." (Emphasis added.) Accordingly, an agreed-upon sentence is reviewable if it is not authorized by law.

scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the offender, the place of residence of the offender, and a motor vehicle, another item of tangible or intangible personal property, or other real property in which the offender has a right, title, or interest or for which the offender has the express or implied permission of a person with a right, title, or interest to use, occupy, or possess if the probation officers *have reasonable grounds to believe* that the offender is not abiding by the law or otherwise is not complying with the conditions of the misdemeanor offender's community control sanction or the conditions of the felony offender's nonresidential sanction.

(Emphasis added.)

{¶ 9} Donnelly contends that the community-control condition of random, searches is not authorized by R.C. 2951.02(A) because the law requires probation officers to have "reasonable grounds" of noncompliance before conducting warrantless searches.[3]

{¶ 10} In support, Donnelly relies on this court's decision in *State v. Turner*, 2019-Ohio-3378, 132 N.E.3d 766 (8th Dist.), and the Ohio Supreme Court's subsequent decision in *State v. Campbell*, 170 Ohio St.3d 278, 2022-Ohio-3626, ___ N.E.3d ____, *cert denied*, ____U.S.____ , 2023 U.S. LEXIS 2720 (June 26, 2023).

{¶ 11} In *Turner*, this court considered whether the trial court abused its discretion in imposing as a condition of probation that the defendant be subject to random, warrantless searches conducted by the APL. The court also considered whether the APL is an authorized probation officer with the authority to conduct the

---

[3] Donnelly makes no argument that this condition violates her constitutional right to be free from unreasonable searches and seizures under the Fourteenth Amendment to the United States Constitutions, and Article I, Section 24 of the Ohio Constitution.

searches. *Id.* at ¶ 50. The *Turner* defendant was convicted of bestiality. Over objection, the trial court ordered as a condition of his community control that the defendant undergo random home inspections to ensure that he had no contact with animals. *Id.* at ¶ 51, 60. The defendant appealed this condition, contending that random, warrantless searches violated his rights to unreasonable searches and seizures. This court agreed, finding that "random" home inspections by a probation officer were not authorized under R.C. 2951.02(A). This court stated:

> While R.C. 2929.21 authorized a trial court broad discretion when imposing community control sanctions, R.C. 2951.02(A) requires "reasonable grounds" to believe a misdemeanor offender is not abiding by the law or the community control sanctions before a warrantless search of real property can be conducted.

*Id.* at ¶ 51. In so holding, this court relied on the Ohio Supreme Court's axiom that a "'sentencing court has broad authority to shape community control sanctions provided that the sanctions are *constitutionally and statutorily permitted.*'" (Emphasis sic.) *Id.* at ¶ 57, quoting *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 19. This court concluded that because random, warrantless searches are not authorized by statute, the trial court abused its discretion ordering "random" home inspections inconsistent with the "reasonable grounds" requirement set forth in R.C. 2951.02(A). This court also concluded that APL officers are probation officers under the law. *Id.* at ¶ 61-63.

{¶ 12} This court's holding in *Turner* is consistent with other districts in Ohio. *In State v. Helmbright*, 2013-Ohio-1143, 990 N.E.2d 154, ¶ 20 (10th Dist.), the court held that a "warrantless search, pursuant to R.C. 2951.02(A), complies with

the Fourth Amendment if the officer who conducts the search possesses 'reasonable grounds' to believe that the probationer has failed to comply with the terms of their probation." In *State v. Smith*, 5th Dist. Stark No. 2011CA00140, 2011-Ohio-6872, the court upheld a search of a residence because the probation officer had reasonable grounds necessary to perform the search. *See also United States v. Knights*, 534 U.S. 112, 121, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (finding that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable").

{¶ 13} Subsequent to *Turner*, the Ohio Supreme Court considered whether evidence obtained by a probation officer following a random, warrantless search of a felony probationer's cell phone should be suppressed when the probationer consented to warrantless searches as a condition of his community control. *Campbell*, 170 Ohio St.3d 278, 2022-Ohio-3626. The court analyzed this issue under two "sources of legal authority" — the Fourth Amendment's prohibition of unreasonable searches and seizures and R.C. 2951.02(A)'s authorization of a probation officer to search a probationer and his property upon having "reasonable grounds to believe" that the probationer is violating the law or community-control conditions. *Id*. at ¶ 2.

{¶ 14} Regarding Fourth Amendment protections, the court held that the probation officer's random, warrantless search did not violate the Fourth

Amendment because the probationer signed a "consent-to-search" agreement as a condition of community control allowing random searches. *Id.* at ¶ 3. The court specifically noted that its holding was consistent with its prior decision in *Benton*, 82 Ohio St.3d at 317, 695 N.E.2d 757, that held "that the Fourth Amendment did not prohibit 'a random search of the residence of a parolee who, as a condition of parole, consented to warrantless searches by parole officers at any time.'" *Id.* at ¶ 11.

{¶ 15} The court found, however, that the random, warrantless search violated R.C. 2951.02(A) because under the plain language of R.C. 2951.02(A), the probation officer did not have "reasonable grounds" to believe that the probationer was violating the law or terms of community control. *Id.* The court determined that the "consent-to-search" agreement was irrelevant because "the probation officer's authority to conduct the search was limited by the statute." *Id.*

{¶ 16} In so holding, the court stated that "probation officers are statutory creations, *see* R.C. 2301.27, they 'have no more authority than that conferred upon them by statute, or what is clearly implied therefrom.'" *Campbell*, 170 Ohio St.3d 278, 2022-Ohio-3626, at ¶ 16, quoting *Hall v. Lakeview Local School Dist. Bd. of Edn.*, 63 Ohio St.3d 380, 383, 588 N.E.2d 785 (1992). The court stated that the consent-to-search agreement did not expand the probation officer's authority because

> the legislature specifically defined the level of suspicion ("reasonable grounds") required to authorize a probation officer to search a probationer. Implicit in this authorization was the denial of authority to search a probationer without reasonable grounds. If that were not so, and probation officers were nonetheless authorized to conduct

searches without reasonable grounds for doing so, then R.C. 2951.02(A) would be nothing more than advice.

It does not matter that Campbell had been required to consent to the search as a condition of his community control, because the probation officer was still constrained by the statutory limits of her authority. *Consent and authority are not the same.* If Campell had given his consent for the probation officer to take his wallet, he might expect his wallet to be taken, but that would not mean that the probation officer was authorized to take it. So too here. Campbell's consent to random searches as a condition of his community-control sanctions limited his legitimate expectation of privacy but did not grant the probation officer additional authority.

(Emphasis added.)

*Id.* at ¶ 17-18. Accordingly, pursuant to *Campbell*, a defendant can consent to random searches as a condition of his probation, but this consent cannot expand the statutory authority granted to a probation department — the probation officer needs "reasonable grounds to believe" that the probationer is violating the law or terms of community control.[4] Although this holding appears counterproductive, it is nonetheless the limitation of authority the General Assembly established for probation officers.

{¶ 17} To be certain that the holding in *Campbell* expressly found the agreement or consent to random searches irrelevant when applying R.C. 2951.02,

---

[4] The *Campbell* Court determined that the evidence found on Campbell's cell phone was not subject to the exclusionary rule because no Fourth Amendment violation occurred. Absent a legislative mandate, the exclusionary rule does not apply "to statutory violations falling short of constitutional violations. * * * A plain reading of R.C. 2951.02(A) reveals no such legislative mandate to impose an exclusionary remedy for a violation of the statute's reasonable-grounds requirement." *Id.* at ¶ 22. Accordingly, it appears that even though a probation officer cannot perform a random search on a person's property, any "fruit" obtained during that search would not be excluded when a defendant enters into a consent-to-search agreement.

the General Assembly, in response to *Campbell*, amended R.C. 2951.02 under Am.Sub.S.B. 288, effective April 4, 2023, by adding two additional subsections that permit a felony offender to expressly consent to random, warrantless searches by authorized probation officers. Under both of those subsections, a probation officer has the authority to conduct random, warrantless searches if (1) the court requires the offender's consent to searches as a part of the terms and conditions of community control and the offender agreed to those terms, or (2) the offender otherwise provides consent to the search. R.C. 2951.02(A)(1)(b) and (c). Both of those subsections, however, apply only to felony offenders — not misdemeanor offenders like Donnelly. Accordingly, the General Assembly had the opportunity to remove the "reasonable grounds" restriction from all probationers and searches, but chose not to do so for misdemeanor probationers.[5] Based on the foregoing, it would appear that the trial court's imposition of random searches as part of Donnelly's community control was possibly error.

{¶ 18} However, this determination does not end this court's discussion or dictate this court's resolution of this case because the procedural posture in *Campbell* and the facts in *Turner* are distinguishable. In *Campbell*, the Ohio Supreme Court reviewed whether the probation officer had exceeded her statutory

---

[5] The General Assembly's decision to not remove the "reasonable grounds" restrictions from all probationers and searches failed to take into account that not all who receive supervision by the court are convicted of felonies. In fact, it would be logical to allow consent-to-search by all probationers to ensure that rehabilitation is achieved prior to reaching felony status. Otherwise, how is the court able to measure compliance with the terms and conditions of probation conditions?

scope in searching the defendant's cell phone and whether the evidence obtained as a part of that search should be suppressed. In the case before this court, the APL or humane society has not exceeded their statutory authority under R.C. 2951.02. In the example that the *Campbell* Court provided, a defendant can consent to the probation officer taking his wallet, but that does not mean that the officer was authorized to do so. *Campbell*, 170 Ohio St.3d 278, 2022-Ohio-3626, at ¶ 18. Accordingly, a defendant can consent to random searches, but this consent cannot expand a probation officer's statutory authority. We find that until the APL expands its authority under the guise of the consent-to-search agreement, the issue is arguably not ripe for review. It is quite possible that when the APL or other humane society officer visits Donnelly's home to gauge compliance, it could be based on "reasonable grounds."

{¶ 19} Additionally, *Turner* is factually distinguishable. In *Turner*, the defendant specifically objected to the trial court's imposition of random searches as part of his community-control sanctions. In this case, Donnelly did not object, but rather acquiesced and negotiated this condition. In fact, the random-inspection term of probation was part of the agreed, recommended sentence that was part and parcel of her overall plea agreement. Accordingly, we agree with appellee that Donnelly has invited the error that she now complains of on appeal.

{¶ 20} Under the invited-error doctrine, "[a] party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *Lester v. Leuck*, 142 Ohio St. 91, 50 N.E.2d 145 (1943), paragraph one of the

syllabus.  The doctrine requires "more than mere 'acquiescence in the trial judge's erroneous conclusion.'" *State v. Campbell*, 90 Ohio St.3d 320, 324, 738 N.E.2d 1178 (2000), quoting *Corrothers v. Hunter*, 23 Ohio St.2d 99, 103, 262 N.E.2d 867 (1970).  In order for the doctrine of invited error to apply, defense counsel "must have been actively responsible for the trial court's error." *Campbell* at 324.

> The doctrine of invited error is a corollary of the principle of equitable estoppel. Under the doctrine of invited error, an appellant, in either a civil or a criminal case, cannot attack a judgment for errors committed by himself or herself; for errors that the appellant induced the court to commit; or for errors into which the appellant either intentionally or unintentionally misled the court, and for which the appellant is actively responsible. Under this principle, a party cannot complain of any action taken or ruling made by the court in accordance with that party's own suggestion or request.

(Citations omitted.)  *Daimler/Chrysler Truck Fin. v. Kimball*, 2d Dist. Champaign No. 2007-CA-07, 2007-Ohio-6678, ¶ 40, citing 5 Ohio Jurisprudence 3d, Appellate Review, Section 448, at 170-171 (1999, Supp.2007).

{¶ 21}  Based on this court's review of the record, even assuming that the trial court committed error in imposing random searches as part of her probation conditions, Donnelly invited the error.  Her counsel advised the court that a plea agreement had been reached with Donnelly agreeing to plead no contest to one charge of animal cruelty in exchange for the state dismissing three other charges.  Additionally, her counsel advised the court that a PSI would not be necessary because the parties proposed a joint, recommended sentence, which according to the prosecutor, included Donnelly agreeing to random inspections by the APL or other humane society to ensure compliance with the conditions that she possessed

no more than four dogs inside of her home and that those dogs be kept in humane, sanitary, and lawful conditions.  At no time did either Donnelly or her counsel object to this assertion or express that this was not their understanding of the agreed sentence.

{¶ 22} Moreover, during the exchange with the court, Donnelly provided the names of the dogs that would be returned to her as part of this agreement.  This court finds that this is not a situation where the defendant merely acquiesced to the trial court's condition to order random inspections; rather Donnelly and her defense counsel actively participated in the plea negotiations, which contained an agreed, recommended sentence that included a probation condition of random inspections.

{¶ 23} It is telling to this court that Donnelly acquiesced to these conditions during her plea agreement because she did not attempt to vacate her plea with the trial court or raise an argument on appeal contending that she did not make a knowing, voluntary, or intelligent plea.  Donnelly has not raised any argument that she was unaware what the "random inspection" requirement involved, and that had she known, she would not have pleaded no contest.  Finally, we further note that Donnelly has not raised any argument that her trial counsel was ineffective for acquiescing or failing to object to this condition of probation that she now opposes.

{¶ 24} The record is clear to this court that Donnelly invited the complained-of error.  Whether a subsequent random search of Donnelly's residence by APL officers will be considered lawful under R.C. 2951.02(A)(1)(a) is yet to be determined.  But under *Campbell*, by agreeing to random searches as a condition of

community control, Donnelly has waived any Fourth Amendment protection. *Campbell*, 170 Ohio St.3d 278, 2022-Ohio-3626, at ¶ 3. Accordingly, this court cannot say that the trial court abused its discretion in accepting the plea agreement and imposing the joint recommended sentence presented by the parties. Donnelly's assignment of error is overruled.

{¶ 25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Berea Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., CONCURS;
EMANUELLA D. GROVES, J., DISSENTS (WITH SEPARATE OPINION)


EMANUELLA D. GROVES, J., DISSENTING:

{¶ 26} I respectfully dissent from the majority opinion. Notably, I agree with the majority up to its detour from both *Campbell* and *Turner*. I disagree with the distinctions that supposedly render these cases inapplicable in this case. First,

this case shares the procedural posture of *Campbell*. Although the search has not occurred in this case, the legality of the random search condition is ripe for review. Since the majority opinion has already established that the condition is contrary to law, no further factual development is needed.

{¶ 27} In *State v. Mims*, 8th Dist. Cuyahoga No. 111789, 2023-Ohio-1044, the state objected to the imposition of jail-time credit on a firearm specification. Mims argued this issue was not ripe because the application of jail-time credit would only become an issue if Mims is granted judicial release. However, this court rejected that argument and found the issue ripe for review. A claim is fit for review if it is (1) "fit for judicial decision" and (2) "whether withholding court consideration will cause hardship to the parties." *State v. Maddox*, 168 Ohio St.3d 292, 2022-Ohio-764, 198 N.E.3d 797, ¶ 8. The first prong is met when the controversy presented in the case is purely legal and clarification of the fact does not require further development. *Mims* at ¶ 14, quoting *State v. Maddox,* 168 Ohio St.3d292, 2022-Ohio-764, 198 N.E.3d 797, ¶ 8, quoting *Thomas v. Union Carbide Agriculture Prods. Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). In *Mims,* the decision to resolve the legal issue then was made because the court was perfectly capable of addressing the issue at that time and failure to do so would cause hardship to the parties. Similarly, the issue here is the legality of the probation condition that allows random searches. The hardship to Donnelly is obvious. The suggestion that Donnelly should wait until a search is conducted to determine whether the search is reasonable would potentially expose Donnelly to an unreasonable search. Given the

lack of limitations on the warrantless search, Donnelly could be subjected to countless warrantless searches before a court could review and order cessation of searches without reasonable grounds.

{¶ 28} In regard to *Turner*, I believe the facts are not distinguishable. In *Turner*, at sentencing the defense attorney stated, "Turner has no objection…We would ask that the court not grant intrusive home inspection." *Turner* at ¶ 60. This request is not an objection. There is nothing in the opinion that reflects an objection was made once the request was denied. Therefore, the facts here are not distinguishable and the precedent established in *Turner* should apply.

{¶ 29} Finally, I do not believe that Donnelly invited the error to subject herself to warrantless searches for five years. The majority's recitation of facts that Donnelly initiated the plea agreement and provided details are not sufficient to demonstrate Donnelly invited the error. If anything, it merely demonstrated Donnelly's cooperation and acceptance of responsibility for her conduct. I find this conduct akin to mere acquiescence as opposed to active responsibility for the trial court's error. Moreover, these facts are insufficient to demonstrate she knowingly and voluntarily waived her Fourth Amendment protection preserved in R.C. 2951.02(A). Consequently, I would have reversed the trial court's imposition of warrantless searches without reasonable grounds to do so.